## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JEREMY W. REEVE,

    *Plaintiff,*

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    *Defendant.*

Case No. 13-cv-1197-EFM

## MEMORANDUM AND ORDER

Plaintiff Jeremy W. Reeve seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits under Title II of the Social Security Act. Plaintiff alleges multiple assignments of error, including the Appeals Council's refusal to consider supplemental medical evidence, the ALJ's refusal to order a psychological evaluation, and the ALJ's evaluation of his credibility and residual functional capacity. Upon review, the Court finds that the Appeals Council erred in not considering the supplemental medical evidence submitted by Reeve with his request for review. Therefore, the decision of the Commissioner is reversed and remanded for further consideration.

##    I.       Factual and Procedural Background

Jeremy Wayne Reeve was born on December 30, 1973, and was thirty-three years old on the alleged disability onset date. Prior to his alleged disability, Reeve worked as a supervisor at a call center and as a security guard. Reeve was not engaged in substantial gainful activity during the period of review.

On April 28, 2009, Reeve filed an application for disability insurance benefits and supplemental security income,[1] alleging disability beginning June 1, 2007. Reeve alleged that he was unable to work because of back problems, sciatica, protruding disc, irritable bowel syndrome, and a slipped disc in his neck. The agency denied Reeve's applications initially and on reconsideration. Reeve then asked for a hearing before an administrative law judge.

Administrative Law Judge James Harty conducted an administrative hearing on January 12, 2011, during which Reeve testified about his medical conditions. On May 23, 2011, the ALJ conducted a supplemental hearing, during which a vocational expert testified that Reeve would be able to perform light work in existing jobs in the unskilled labor market. In addition, Reeve's counsel and the ALJ discussed the potential need for a consultative examination concerning Reeve's mental health impairment. The ALJ determined, however, that the record contained sufficient evidence to make a determination regarding Reeve's mental impairment and therefore did not order a consultative examination.

On June 17, 2011, the ALJ issued his decision, finding that Reeve suffered from a variety of severe impairments, including obesity, hypertension, depression, and degenerative changes to

---

[1] Reeve's application for Title XVI supplemental security income was resolved because he had income that exceeded program rules. Only Reeve's application for Title II disability insurance benefits was at issue before the ALJ.

the lumbar, thoracic, and cervical spines. Despite these findings, the ALJ determined that Reeve did not have an impairment that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Reeve retained the residual functional capacity to perform light work, as that term is defined under Social Security Regulations, with the following limitations and/or exceptions: (1) only occasional lifting of twenty pounds and frequent lifting of ten pounds; (2) standing/walking or sitting about six hours in a normal eight hour workday, with normal breaks and with the option to alternate sitting or standing up for up to thirty minutes as needed; (3) occasional stooping, crouching, and climbing ramps and stairs; (4) no kneeling, crawling, and climbing ladders, ropes, or scaffolds, (5) no overhead reaching; (6) no concentrated exposures to cold temperature extremes and vibration; and (7) only simple, routine, repetitive tasks and occasional interaction with the general public. The ALJ therefore concluded that Reeve had not been under a disability since June 1, 2007, the alleged onset date, through the date of his decision.

Given this unfavorable result, Reeve sought reconsideration of the ALJ's decision from the Appeals Council. Along with his request for review, Reeve submitted supplemental medical records relating to the time period between August 2011 and January 2012 and a letter from a treating physician dated June 4, 2012. The Appeals Council refused to consider the supplemental medical evidence and denied Reeve's request. As such, the ALJ's June 2011 decision became the final decision of the Commissioner.

On May 22, 2013, Reeve filed a Complaint in the United States District Court, District of Kansas seeking reversal of the ALJ's decision and the immediate award of benefits or, in the alternative, a remand to the Commissioner for further consideration. Given Reeve's exhaustion of all administrative remedies, his claim is now ripe for review before this Court.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."[2]    The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[3]   "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[4]   The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[5]

An individual is under a disability only if he can "establish that she has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[6]   This impairment "must be severe enough that he is unable to perform his past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering his age, education, and work experience."[7]

---

[2] 42 U.S.C. § 405(g).

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[4] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. Jul. 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[5] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

[6] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[7] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[8] The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[9]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of impairments.[10] If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from his impairments."[11]

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his past relevant work or whether he can generally perform other work that exists in the national economy, respectively.[12] The claimant bears the burden in steps one through four to prove a disability that prevents performance of his past relevant work.[13] The burden then

---

[8] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).

[9] *Barkley*, 2010 WL 3001753 at *2.

[10] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753 at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[11] *Barkley*, 2010 WL 3001753 at *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[12] *Barkley*, 2010 WL 3001753 at *2 (citing *Williams*, 844 F.2d at 751).

[13] *Lax*, 489 F.3d at 1084.

shifts to the Commissioner at step five to show that, despite his alleged impairments, the claimant could perform other work in the national economy.[14]

### III. Analysis

Reeve challenges the ALJ's decision on the following grounds: (1) the Appeals Council's failure to consider additional evidence; (2) the ALJ's failure to order a psychological evaluation; (3) the ALJ's failure to properly evaluate Reeve's residual functional capacity; and (4) the ALJ's failure to adequately assess Reeve's credibility.

#### A. The Appeals Council's Refusal to Consider Additional Evidence

Reeve argues that the Appeals Council erred in refusing to consider the evidence he submitted in conjunction with his request for review. On June 26, 2012, Reeve submitted supplemental evidence to the Appeals Council that was made part of the administrative record. This evidence consisted of medical records from Dr. Rees, dated August through September 2011, and medical records from Dr. Pence, dated September 2011 through January 2012. In denying Reeve's request for reconsideration, the Appeals Council noted that the ALJ decided Reeve's case on June 17, 2011, and that the new medical records "are about a later time"[15] and therefore do not affect the decision about whether Reeve was disabled on or before June 17, 2011.

Also in connection with his request for review, Reeve submitted a treating source opinion letter by Dr. Pence dated June 4, 2012. Dr. Pence's letter refers to the additional medical records that Reeve submitted to the Appeals Council, Reeve's arthritis and spine problems, Reeve's obesity, and Reeve's depression. Dr. Pence states that Reeve underwent open dislocation and

---

[14] *Id*.

[15] Appeals Council Denial, Doc. 9-2, p. 3.

joint debridement and labral reconstruction of the left hip that was mildly successful. He states that Reeve is limited to less than a full-time job without unscheduled work releases for ten minutes or longer and the expectation of missing several days of work per month because of severe pain. The Appeals Council, however, did not make this letter a part of the administrative record or mention this letter in its denial of Reeve's request for review.

Reeve makes two arguments regarding the supplemental evidence. First, he contends that the Appeals Council should not have dismissed the medical records that were made a part of the administrative record solely on the basis that they post-dated the ALJ's decision. The Court agrees. The Appeals Council is required to consider properly submitted evidence that is "new, material, and temporally relevant."[16] In *Baca v. Department of Health and Human Services*,[17] the Tenth Circuit held that

> evidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date.[18]

In that case, the Tenth Circuit found medical records regarding the claimant's degenerative joint disease and mental impairments that were created within fourteen months of the expiration of the claimant's insured status to be "probative medical evidence."[19]

---

[16] *Davison v. Astrue*, 2012 WL 4214895, at *4 (D. Kan. Sept. 19, 2012) (citing *Martinez v. Astrue*, 389 Fed. Appx. 866, 868-69 (10th Cir. Aug. 3, 2010)).

[17] 5 F.3d 476 (10th Cir. 1993).

[18] *Id.* at 479 (quotations omitted).

[19] *Id.*

Here, the additional medical evidence that the Appeals Council made a part of the record meets the "new, material, and temporally relevant"[20] requirement. Reeve began seeing Dr. Rees two months after the ALJ's decision and Dr. Pence three months after the ALJ's decision. The medical records from these doctors relate back to the relevant time period and show the severity of Reeve's impairments. During Reeve's first visit with Dr. Rees on August 4, 2011, Reeve complained of chronic back pain that was present for at least two years and gave a history of degenerative disc disease, epidural injection, and a motor vehicle accident. Dr. Rees found that Reeve experienced pain with straight leg raises bilaterally and resistance to extension in both legs. At his next visit with Dr. Rees on September 6, 2011, Reeve reported pain in his left hip that worsened with walking in the last six months. Dr. Rees again found some pain with the straight leg raises and internal and external rotations.

Dr. Rees referred Reeve to Dr. Pence, who ordered several x-rays of Reeve's hips, knees, and ankles. The September 13, 2011, right hip x-ray showed mild to moderate degenerative disease with bony spurs involving acetabulum and right proximal femoral head/neck junction region. The September 13, 2011, ankle x-rays showed: irregularity involving the distal aspect of the medial malleolus, "which may be from old traumatic changes,"[21] a prominent calcaneal spur at the Achilles attachment on the right, and bony irregularity and hypertropic appearing changes of the medial malleolus that "may also be from old traumatic changes."[22] In addition, the x-rays of the knees on September 13, 2011, showed focal calcifications overlying the lateral aspect of the right femoral tibial joint space region that "may represent degenerative changes versus old

---

[20] *Davison*, 2012 WL4214895, at *4 (citing *Martinez*, 389 Fed. Appx., at 868-69).

[21] September 13, 2011, Ankle X-Ray, Doc. 9-9, p. 53.

[22] *Id*.

soft tissue injury."[23]  Finally, the left hip MRI performed on September 15, 2011, showed marginal oteophytes on the left femoral head and that the left acetabular labrum was hypertrophied and ossified.  Based on these findings, Reeve underwent a fixed osteotomy of the left hip.

The findings in Dr. Pence's medical records were either degenerative or the result of old injuries.  The very nature of the x-ray results and Reeve's hip surgery was that they were not recent injuries.  The records do not show any medical developments between the time the ALJ issued his decision and the time that Reeve saw Dr. Pence that could have caused these problems.  Therefore, the Appeals Council should not have dismissed this evidence on the basis that it did not relate back to the time period for which benefits were denied.

Reeve also argues that the Appeals Council erred by not making Dr. Pence's June 4, 2012, letter a part of the administrative record and by not considering it with his request for review.  The evidence shows that Reeve submitted this letter to the Appeals Council after requesting an additional thirty days to obtain medical records supporting his request for review.  Therefore, the Appeals Council erred in not making this letter a part of the record.  With regard to the information contained within the letter itself, the Court notes that it contains much of the same information found within the supplemental medical records that the Appeals Council did make a part of the administrative record.  However, to the extent it contains additional information, the Appeals Council should consider this information when reviewing Reeve's request for review.  The Court therefore remands this case to the Appeals Council to consider the

---

[23] September 13, 2011, Knee X-Ray, Doc. 9-9, p. 56.

supplemental medical records and the June 4, 2012, letter from Dr. Pence regarding Reeve's limitations.

### B.     The ALJ's Decision

Reeve's next assignments of error concern the ALJ's decision.  Reeve contends that the ALJ erred by not ordering a consultative psychological examination, by not properly evaluating Reeve's subject complaints of pain, and by not properly evaluating Reeve's residual functional capacity.  Because, however, the Court reverses and remands for consideration of the supplemental medical evidence before the Appeals Council, the Court need not consider these issues at this time.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **REVERSED**, and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED**.

Dated this 26th day of September, 2014.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE